1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8    PATHAN ATIKURRAHEMAN,

9                              Petitioner,          Case No. C24-262-JHC-SKV

10          v.

11    MERRICK GARLAND, *et al*.,                    REPORT AND RECOMMENDATION

12                              Respondents.

13

14              I.       INTRODUCTION

15          Petitioner Pathan Atikurraheman is currently detained by U.S. Immigration and Customs

16    Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma,

17    Washington.  He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking

18    release from custody.  Dkt. 1.  Petitioner, who is proceeding through counsel, asserts that he is

19    entitled to release because his detention by ICE has become indefinite within the meaning of

20    *Zadvydas v. Davis*, 533 U.S. 678 (2001).  *See id*. at 3.  The Government has filed a return

21    memorandum and motion to dismiss which is currently ripe for review.  Dkt. 7.  Petitioner has

22    filed a response opposing the Government's motion to dismiss (Dkt. 10), and the Government

23    has filed a reply in support of its motion (Dkt. 11).

REPORT AND RECOMMENDATION
PAGE - 1

The Court, having considered the parties' submissions and the governing law, concludes the Government's motion to dismiss should be granted, Petitioner's federal habeas petition should be denied, and this action should be dismissed.

## II.    BACKGROUND

Petitioner is a native and citizen of India. Declaration of Christopher Sica (Sica Decl.), Dkt. 8, ¶ 4; Declaration of Michelle R. Lambert (Lambert Decl.), Dkt. 9, Exs. A at 1, C at 1. Petitioner was admitted to the United States on or about October 27, 1997, on an R-1 visa[1], and his status was adjusted to that of a lawful permanent resident ("LPR") on June 26, 1998. *See* Lambert Decl. Exs. A at 4, C at 1. Petitioner worked as an imam while in the United States. Sica Decl., ¶ 4.

On August 28, 2000, Petitioner was convicted in the Superior Court of California, County of Santa Clara, of two counts of aggravated sexual assault of a child under 14 years old and 10 or more years younger than the defendant, six counts of a lewd or lascivious act on a child under the age of 14, and one count of continuous sexual abuse of a child under the age of 14. Lambert Decl., Ex. B at 27. Petitioner was sentenced on January 5, 2001, to a total term of imprisonment of 15 years to life. *See id*., Ex. B at 11-12. Petitioner appealed the judgment to the Court of Appeal of the State of California, for the Sixth Appellate District, and on December 13, 2002, that court reversed the judgment and remanded the matter for resentencing. *See id*., Ex. B at 15, 27-47. On remand, the charge of continuous sexual abuse of a child was stricken, and the Superior Court resentenced Petitioner on May 1, 2003, to a term of 15 years to life. *See id*., Ex. B at 9-10. The new judgment was affirmed on appeal. *Id*., Ex. B at 18-19. Petitioner also filed

---

[1] An R-1 visa is a nonimmigrant visa issued to foreign religious workers. *See* Sica Decl., ¶ 4 n.1.

two petitions for post-conviction relief in the California appellate courts and both were denied. *See id*., Ex. B at 20-25.

On June 5, 2023, California State Prison Solano notified the ICE Office of Enforcement and Removal Operations ("ERO") of Petitioner's status as a foreign national and indicated that Petitioner had been found suitable for parole and was scheduled for release on July 17, 2023. Sica Decl., ¶ 10; Lambert Decl., Ex. A at 3.  On July 17, 2023, Petitioner was arrested by an ICE deportation officer and released into ICE custody in Vacaville, California.  Lambert Decl., Ex. A at 3.  He was thereafter ordered detained and transferred to the NWIPC.  *See* Sica Decl., ¶ 11; Lambert Decl., Exs. C, D.  On the same date, Petitioner was served with a Notice to Appear ("NTA"), charging him as removable pursuant to 8 U.S.C. §§ 1227(a)(2)(A)(iii), for having been convicted of an aggravated felony relating to sexual abuse of a minor.  *See* Sica Decl., ¶ 11; Lambert Decl., Ex. C.  The NTA was thereafter filed with the Executive Office for Immigration Review, which resulted in Petitioner being placed in removal proceedings.  Sica Decl., ¶ 11.

Petitioner appeared before an immigration judge ("IJ") for removal proceedings on August 3, 2023.  Sica Decl., ¶ 12.  At that hearing, Petitioner waived his right to an attorney, conceded the charge of removability, and was ordered removed to India.  *See id*.; Lambert Decl., Ex. E.  Petitioner waived his right to appeal the IJ's decision, and his removal order thus became administratively final on August 3, 2023.  *See id*.  The Government thereafter had 90-days to effectuate Petitioner's removal.  8 U.S.C. § 1231(a)(1)(A).  On September 15, 2023, ICE submitted a Travel Document Request ("TDR") to the Consulate General of India in San Francisco, California.  Sica Decl., ¶ 14.  ICE submitted with the TDR an expired handwritten passport that Petitioner was able to produce.  *See* Lambert Decl., Exs. A at 4, H at 2.  As of March 7, 2024, the TDR remained pending.  *See* Sica Decl., ¶ 26.

REPORT AND RECOMMENDATION
PAGE - 3

ICE Deportation Officer Christopher Sica has submitted a declaration attesting that though no travel document has yet been issued for Petitioner, the government of India continues to process travel documents for their citizens and that, in his experience, the process can take in excess of six months to conclude.  Sica Decl., ¶ 28.  Officer Sica, in a supplemental declaration, attests that based on his information and experience, the delay in obtaining a travel document for Petitioner "is likely because the Indian government must conduct an investigation in India into Petitioner's identity before they can issue a travel document for his return."  Supplemental Declaration of Christopher Sica (Sica Decl. II), Dkt. 12, ¶ 3.  Officer Sica further attests that "[o]nce verification of Petitioner's identity is complete, it is routine practice for India to issue a travel document soon thereafter."  *Id*.

During Petitioner's time in ICE custody, ICE has reviewed Petitioner's detention on at least two occasions.  In November 2023, ICE completed a Post Order Custody Review ("POCR") and determined that Petitioner would remain in custody because he posed a danger to public safety, and he was a flight risk.  Sica Decl., ¶ 18; Lambert Decl., Exs. F, G.  In March 2024, ICE reviewed Petitioner's detention again, and again determined that Petitioner would remain in custody.  Lambert Decl., Ex. H.  A document prepared by an ICE Headquarters Removal and International Operations ("HQ-RIO") officer in relation to this second POCR notes that handwritten passports, such as the one produced by Petitioner, take longer to verify and travel documents take longer to issue, but they are "usually" issued.  *See id*., Ex. H at 2.  The same document indicates that the request for Petitioner's travel document "has been escalated to senior levels in the Indian government to help expedite the process."  *Id*.  The officer who prepared the document concluded there was a significant likelihood Petitioner would be removed in the reasonably foreseeable future.  *See id*.  Petitioner was scheduled for another custody

1   review on or about April 29, 2024, after the briefing in this matter was complete.  Sica Decl. II,

2   Dkt. 12, ¶ 6.

3          Petitioner initiated the instant action on February 26, 2024.  Dkt. 1.  Petitioner alleges

4   that his continued detention violates 8 U.S.C. § 1231(a)(6) and his due process rights.  Dkt. 1 at

5   3.  Petitioner maintains that since his removal order became final on August 3, 2023, no progress

6   has been made towards his removal to India.  *Id*.  Petitioner asserts that given the amount of time

7   that has passed since his removal order became final, approximately seven months at the time he

8   filed his petition, there is no reasonable likelihood that his deportation will be effectuated in the

9   reasonably foreseeable future.  *Id*.  Petitioner requests that he be released from detention.  *Id*. at

10   5.  The Government argues that Petitioner's detention is constitutional pending his removal, and

11   requests that the petition be dismissed.  Dkt. 7.  Petitioner opposes the motion to dismiss.  Dkt.

12   10.

13                              **III.    DISCUSSION**

14   **A.    Indefinite Detention**

15          Title 8 U.S.C. § 1231 governs the detention and release of noncitizens such as Petitioner

16   who have been ordered removed.  Under § 1231(a), the Department of Homeland Security

17   ("DHS") is required to detain a noncitizen during the 90-day "removal period."  8 U.S.C.

18   §§ 1231(a)(2), (a)(1)(B).  In this case, the removal period began on the date Petitioner's removal

19   order became administratively final, August 3, 2023, and the removal period expired 90 days

20   later on November 1, 2023.  *See* 8 U.S.C. § 1231(a)(1)(B)(i).

21          After the removal period expires, DHS has the discretionary authority to continue to

22   detain certain noncitizens, including those who are removable under § 1227(a)(2), or to release

23   them on supervision.  8 U.S.C. § 1231(a)(6).  Specifically, DHS may detain a noncitizen who has

been determined "to be a risk to the community or unlikely to comply with the order of

removal." *Id.*  As noted above, ICE has determined that Petitioner poses a danger to public

safety and presents a flight risk.  *See* Lambert Decl., Exs. F, G; *see also id*., Ex. H.  Because

Petitioner is removable under § 1227(a)(2), his detention comports with the statute.

Although § 1231(a)(6) authorizes ICE to detain Petitioner, it cannot do so indefinitely.  In

*Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to

a period reasonably necessary to bring about that individual's removal from the United States

and does not permit "indefinite" detention.  *Zadvydas*, 533 U.S. at 701.  The Supreme Court

determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months

following entry of a final removal order while it works to remove the individual from the United

States.  *Id*.  "After this 6-month period, once the [noncitizen] provides good reason to believe

that there is no significant likelihood of removal in the reasonably foreseeable future, the

Government must respond with evidence sufficient to rebut that showing."  *Id*.  If the

Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief.

*Id*.

The six-month presumption "does not mean that every [noncitizen] not removed must be

released after six months.  To the contrary, [a noncitizen] may be held in confinement until it has

been determined that there is no significant likelihood of removal in the reasonably foreseeable

future."  *Zadvydas*, 533 U.S. at 701.  Nevertheless, "for detention to remain reasonable, as the

period of prior post removal confinement grows, what counts as the 'reasonably foreseeable

future' conversely would have to shrink."  *Id*

In this case, the presumptively reasonable six-month period expired on or about February

3, 2024, approximately three months ago.  Petitioner asserts there is no good reason to believe he

1    will be removed to India in the reasonably foreseeable future.  *See* Dkt. 10 at 1.  Petitioner first

2    argues that India is not accepting its citizens for removal in a timely manner, and he claims the

3    U.S. State Department has designated India a "recalcitrant" country because it does not

4    cooperate with the deportations of its citizens from the United States.  *Id*. at 2.  In support of this

5    argument, Petitioner cites to an article published on the website of the Migration Policy Institute

6    in December 2022, in which the author claims that "[a]s of mid-2020" the United States

7    considered India, along with 12 other countries and territories, recalcitrant.  *See* Dkt. 10, Ex. A.

8    However, Petitioner does not cite to any official source demonstrating that India is currently

9    considered a recalcitrant country, and Deportation Officer Sica attests that ICE does not consider

10    India to be recalcitrant because the government of India continues to process travel documents

11    for its citizens and to accept charter flights.  Sica Decl. II, ¶ 7.

12    Petitioner also argues that statistical evidence supports the conclusion that his removal

13    will not occur in the reasonably foreseeable future.  Petitioner cites to a portion of the ICE

14    website which contains information regarding numbers of arrests, removals, and detentions of

15    noncitizens that occurred during the period October 2020 through September 2023.  *See* Dkt. 10

16    at 2; https://www.ice.gov/spotlight/statistics.  While the referenced statistics identify the number

17    of Indian nationals arrested, the number of individuals deported to India, and the total number of

18    Indian citizens detained during specified time frames, they do not, as Petitioner suggests, show

19    that the rate at which India issues travel documents has slowed.  *See* Dkt. 10 at 4.  Indeed, the

20    ICE website reveals nothing about how many TDRs for Indian nationals were pending during the

21    period for which statistics are available, how many may currently be pending, or the rate at

22    which such TDRs are resolved.  The statistics do, however, demonstrate that Indian nationals

23    continue to be removed to India.  *See* https://www.ice.gov/spotlight/statistics.

REPORT AND RECOMMENDATION
PAGE - 7

1    Petitioner next argues that he is likely to be subject to additional delays in obtaining a

2    travel document because he does not have a valid passport. *See* Dkt. 10 at 2. Petitioner claims

3    that when an Indian national does not have a valid passport, India requires a local investigation

4    into the person's citizenship, and that such investigations can be delayed when the identity

5    documents are decades old as is the case here. *See id*. at 2-3. Deportation Officer Sica confirms

6    that the delay in obtaining a travel document for Petitioner is "likely because the Indian

7    government must conduct an investigation in India into Petitioner's identity before they can issue

8    a travel document for his return." Sica Decl. II, ¶ 3. However, Officer Sica also attests that once

9    verification of an individual's identity is complete, it is routine practice for India to issue a travel

10    document shortly thereafter. *Id*. Office Sica further attests that over the last year, ERO has

11    effectively removed at least six Indian nationals from NWIPC whose travel documents were

12    processed in a manner similar to Petitioner's. *Id*., ¶ 4.

13    Finally, Petitioner argues that India has ignored ICE's requests for status updates during

14    the months the TDR has been pending and that this provides an additional basis on which to

15    conclude there is no good reason to believe that his removal his likely in the reasonably

16    foreseeable future. Dkt. 10 at 4. However, the record before this Court demonstrates that ERO

17    Seattle has been notified on numerous occasions since November 2023 that Petitioner's TDR

18    remains pending, which presumably requires confirmation from the Indian government. *See* Sica

19    Decl., ¶¶ 19, 22, 25, 26

20    Despite his many arguments, Petitioner has not provided good reason to believe his

21    removal is not significantly likely to occur in the reasonably foreseeable future. Though the

22    Government has not identified a specific date by which it expects a travel document to issue, the

23    Ninth Circuit has held that uncertainty as to when removal will occur does not establish that

REPORT AND RECOMMENDATION
PAGE - 8

detention is indefinite. *Diouf v. Mukasey* ("*Diouf I*"), 542 F.3d 1222, 1233 (9th Cir. 2008)

("That the detention did not have a certain end date does not change the analysis."); *see also*

*Zadvydas*, 533 U.S. at 702 (holding that the fact there was no "extant or pending" repatriation

agreement with the country of removal was insufficient to establish detention was indefinite and

remanding for the lower courts to also consider the likelihood that future negotiations would

result in a repatriation agreement).  The Ninth Circuit has explained that detention becomes

indefinite if, for example, the country designated in the removal order refuses to accept the

noncitizen, or if removal is barred by the laws of this country.  *Diouf I*, 542 F.3d at 1233.

Neither situation exists here.

Both parties have endorsed the view that the delay in obtaining travel documents is likely

attributable to the need for India to conduct an investigation into Petitioner's identity given the

absence of a valid passport.  Nothing in the record suggests that there is any substantive

difficulty in obtaining travel documents.  Indeed, Officer Sica attests that, to date, ICE has not

been informed by the Indian government that it cannot verify Petitioner's identity or that it

would not accept Petitioner's return upon verification of his identity.  Sica Decl. II, ¶ 7.  There is

simply no evidence that the delay in issuing Petitioner travel documents has been caused by

anything other than nationality verification in India being a slow process, which does not

undermine the conclusion that removal remains foreseeable.  *See Lema v. I.N.S.*, 214 F. Supp. 2d

1116 (W.D. Wash. 2002).

This Court concludes that though Petitioner has at this point been detained beyond the

presumptively reasonable six-month period, it is significantly likely that Petitioner's removal

will occur in the reasonably foreseeable future.  Accordingly, Petitioner is not entitled to habeas

relief.

REPORT AND RECOMMENDATION
PAGE - 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**B.      Request for Discovery/Evidentiary Hearing**

Petitioner includes in his response to the Government's motion to dismiss a request that the Court order appropriate discovery or hold an evidentiary hearing in this matter. Dkt. 10 at 4-5. Petitioner sets forth in his brief six proposed interrogatories that he believes will lead to the production of evidence demonstrating that he is entitled to relief in this federal habeas action. *Id*. at 5-6. The Government argues that neither discovery nor an evidentiary hearing is warranted here as Petitioner fails to demonstrate that this Court requires any further evidence to determine whether there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future. Dkt. 11 at 4. This Court concurs with the Government.

Parties in a habeas proceeding are not entitled to discovery as a matter of course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). However, a federal habeas court may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery. *See* Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts (applicable to § 2241 cases pursuant to Rule 1(b) of the Rules Governing Section 2254 Cases in the United States District Courts). Good cause may be shown "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is … entitled to relief." *Bracy*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). Absent a showing of good cause, a court should deny a motion for leave to conduct discovery. *Rich v. Calderon*, 187 F.3d 1064, 1067-68 (9th Cir. 1999).

Petitioner fails to show that there is good cause to permit him to conduct discovery in this federal habeas action. Petitioner seeks evidence to support his claim that there is no reason to believe he will be removed to India in the reasonably foreseeable future. *See* Dkt. 10 at 4-6.

REPORT AND RECOMMENDATION
PAGE - 10

However, as the Government correctly notes, a number of Petitioner's proposed interrogatories are not specific to Petitioner's pending TDR and are therefore unlikely to offer any insights into the reasonable foreseeability of his removal at this time. *See* Dkt. 11 at 4. As to the remaining interrogatories, this Court is not persuaded that they are likely to generate evidence beyond that which is already in the record and/or evidence that lends any additional weight to Petitioner's claim that his removal is not likely to occur in the reasonably foreseeable future. Accordingly, Petitioner's request for discovery or for an evidentiary hearing should be denied.

## IV.    CONCLUSION

Based on the foregoing, this Court recommends that the Government's motion to dismiss (Dkt. 7) be GRANTED, and that Petitioner's federal habeas petition (Dkt. 1) and this action be DISMISSED. This Court further recommends that Petitioner's request for discovery or for an evidentiary hearing (Dkt. 10 at 4-6) be DENIED. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation must be filed with the Clerk and served upon all parties not later than **twenty-one (21) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **twenty-one (21) days** from the date they are filed. Responses to objections may be filed within **fifteen (15) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 3, 2024**.

DATED this 10th day of May, 2024.

S. KATE VAUGHAN
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 11